

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

FEB 07 2022

ARTHUR JOHNSTON
BY_____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**M.K. a minor by and through his father**
**And next friend GREG KOEPP**                              **Plaintiff**

**v.**                                         Cause No: 1.22cv25 HS0-RHWR

**PEARL RIVER COUNTY SCHOOL DISTRICT;**
**P.B. a minor by and through his parents;**
**P.A. a minor by and through his parents;**
**I.L. a minor by and through his parents;**
**L.M. a minor by and through his parents;**
**W.L. a minor by and through his parents;**
**ALAN LUMPKIN, individually and as Superintendent;**
**CHRIS PENTON, individually and as employee;**
**AUSTIN ALEXANDER, individually and as employee;**
**STEPHANIE MORRIS, individually and as employee;**
**TRACEY CRENSHAW, individually and as employee;**
**BLAKE RUTHERFORD, individually and as employee; and**
**JOHN DOES 1-10**                                         **Defendants**

## COMPLAINT
## JURY TRIAL DEMANDED

Plaintiff files this Complaint seeking declaratory, injunctive and monetary

relief against Defendants for discrimination in violation of Title IX ("Title IX"),

violations of the due process clause of the First, Fifth, and Fourteenth Amendment

to the U.S. Constitution brought pursuant to 42 U.S.C. § 1983 and for breach of

contract. In support of this Complaint, Plaintiff alleges as follows:

### INTRODUCTION

This action is reluctantly filed after the Pearl River County School District and

its employees have done nothing to prevent the bullying and harassment of M.K. It

seems that every day in America some child is hurt or takes their own life because they are being bullied at school. Despite actual knowledge about the ill affects of bullying on the psychological and emotional state of minors, the School Defendants chose to retaliate against the victim and punish the victim and his family. The School Defendants actions are sure to lead to more serious and dangerous outcomes if the School Defendants are not held accountable for their violations of federal law and the constitutional rights of M.K.

M.K. wanted an amicable resolution. Instead of trying to resolve the issues, the school forced M.K. to bring litigation against the Pearl River County School District, the students, and the officials involved. Administration left M.K. with no choice based upon the district's refusal to try and resolve the matter outside the courts.

## PARTIES

1. The PEARL RIVER COUNTY SCHOOL DISTRICT is government entity organized under the laws of the State of Mississippi who may be served with process through its Superintendent at 7441 Highway 11, Carriere, Mississippi 39426.

2. P.B. is a minor resident of Pearl River County who is sued by and through his parents who may be served with process at their home.

3. P.A. is a minor resident of Pearl River County who is sued by and through his parents who may be served with process at their home.

4. I.L. is a minor resident of Pearl River County who is sued by and through his parents who may be served with process at their home.

5. L.M. is a minor resident of Pearl River County who is sued by and through his
   parents who may be served with process at their home.

6. W.L. is a minor resident of Pearl River County who is sued by and through
   his parents who may be served with process at their home.

7. ALAN LUMPKIN is sued individually and as Superintendent of Pearl River
   County and may be served with process at 7441 Highway 11, Carriere,
   Mississippi 39426.

8. CHRIS PENTON is sued individually and as an official of the Pearl River
   County School District and may be served with process at 7441 Highway 11,
   Carriere, Mississippi 39426.

9. AUSTIN ALEXANDER is sued individually and as an official of the Pearl
   River County School District and may be served with process at 7441
   Highway 11, Carriere, Mississippi 39426.

10. STEPHANIE MORRIS is sued individually and as an official of the Pearl
    River County School District and may be served with process at 7441
    Highway 11, Carriere, Mississippi 39426.

11. TRACEY CRENSHAW is sued individually and as an official of the Pearl
    River County School District and may be served with process at 7441
    Highway 11, Carriere, Mississippi 39426.

12. BLAKE RUTHERFORD is sued individually and as an official of the Pearl
    River County School District and may be served with process at 7441
    Highway 11, Carriere, Mississippi 39426.

13. JOHN DOES 1-10 are persons and entities who are responsible for the improper actions against M.K. , including but not limited to the Title IX disciplinary investigation and sanction of confinement, or who are later identified as necessary parties.

## JURISDICTION AND VENUE

14. This case arises in part under Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681 et seq., and the First and Fourteenth Amendments to the United States Constitution, brought pursuant to the procedural vehicle of 42 U.S.C. §1983 and accordingly, this Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

15. This Court has supplemented jurisdiction over Plaintiff s state law contract claim pursuant to 28 U.S.C. § 1367.

16. This Court is an appropriate venue for this cause of action pursuant to 28 U.S. C. § 1391. Defendant Pearl River County School District has a campus situated in this district. Further, certain of the predicate acts giving rise to the claims herein occurred in part within this district.

## STATEMENT OF FACTS

17. M.K. was homeschooled by his parents through the 2019-2020 school year. M.K. was enrolled in the Pearl River Central Elementary School for the 2020 – 2021 school year, yet the classes were 'virtual' with the use of Chromebooks. M.K. physically attended the last four weeks of the school year in spring of 2021. M.K. was then enrolled in August 2021 at the Pearl River Central Middle School for the current 2021 – 2022 school year.

18. In August of 2021 M.K. was enrolled in the Pearl River County School

District.

19. After enrolling and beginning school, M.K. began to experience harassment and bullying for minors P.B., P.A., I.L., L.M., and W.L. (Hereinafter Collectively referred to "Bullies")

20. The bullying and harassment consisted primarily of name calling and refences to the minor's apparent belief that M.K. was homosexual.

21. On a daily basis, and sometimes multiple times a day, M.K. was called "gay" and other slurs by the Bullies. M.K. was also bullied because of his smaller stature.

22. Upon information and belief, the Bullies harassed and bullied M.K. because M.K. had been home schooled and had not yet adapted to the social constructs of middle school.

23. M.K. was socially awkward as he learned to adapt to middle school.

24. M.K. and his parents complained to the School Defendants about the bullying and harassment but no reasonable action was taken to prevent the harassment.

25. On or about September 19, 2021 the bullying escalated to an assault when P.B. shoved M.K. into a metal pole and injured. The incident was reported to a teacher and P.B. was not removed from school, suspended, or given detention for the assault.

26. After the assault M.K.'s parents again complained to the School Defendants about the bullying and harassment, but none of the Bullies were given suspension or detention.

27. On or about October 19, 2021, the Bullies were still calling M.K. names and verbally abusing M.K.

28. On or about October 19, 2021 went to the bathroom. At time M.K. went to the bathroom, M.K. had been referred to as "gay" or there slurs numerous times. M.K. went to the bathroom and for some unknown reason M.K. was followed into the bathroom by I.L., who had been bullying M.K. all day.

29. M.K.'s teacher should have known that it was not prudent to allow a bully to follow his victim to the bathroom.

30. I.L. waited by the sink while M.K. went in to the use bathroom, still being harassed by I.L.

31. At this point, M.K. believed that being called "gay" meant that the bullies were calling M.K. a girl.

32. Because the School Defendants were taking no action to prevent the bullying, M.K. decided to prove that he was a boy, not a girl, to his bullies.

33. To prove that he was in fact a boy, M.K. exited the stall he was in with his male genitals exposed so that I.L. could see that M.K. was in fact a boy, not a girl.

34. Of course, this event in the bathroom would have never happened had the School Defendants done something to prevent the bullying and harassing behavior in the first place.

35. I.L. then ran and told a teacher what had happened in the bathroom.

36. The teacher than tried to question M.K. and I.L about what happened but

M.K. became quiet. It should be noted that the teacher's questioning of M.K. already surpassed all actions previously taken by the School Defendants to prevent the bullying in the first place.

37. Because M.K. would not respond to the teacher's questions, male employees were called in by the school administration in an effort to bully and intimidate M.K. into talking.

38. M.K.'s parents were not notified as M.K. was interrogated by older males.

39. None of M.K.'s Bullies had been interrogated by teachers, principals, or any other administrators.

40. Once the interrogation was over, M.K.'s parents were notified that M.K. was being referred for punishment.

41. On October 26, 2021 the Disciplinary Committee, made up of Stephanie Morris, Tracey Crenshaw, Blake Rutherford and Austin Alexander all met with Chris Penton and Alan Lumpkin to discuss the bathroom event.

42. At the hearing, M.K. was not allowed to question any person about what happened, how it happened, or why it happened.

43. M.K. was not allowed by the Committee to present evidence even though the school handbook says in black and white that M.K. can question witnesses and present evidence.

44. At the conclusion of the hearing, M.K. was suspended from school for the remainder of the semester. During suspension, M.K. could enroll at the Endeavor Alternative school.

45. If M.K. decided to not to enroll at Endeavor, M.K. was to notify the superintendent.

46. Because Endeavor is essentially a prison, M.K. decided to be home schooled for the remainder of the semester which was approved by the superintendent.

47. M.K. notified the school that he desired to appeal his punishment because the punishment was grossly disproportionate to the crime, arbitrary, capricious, and unequal compared to the punishment of other students for more serious offenses.

48. An appeal was eventually held, albeit taking over a month to hold. The punishment was upheld by the school board.

49. After the punishment was upheld M.K. through counsel, contacted Alan Lumpkin regarding the start of the 2022 semester and just making sure that there were no unresolved issues.

50. In response, Lumpkin unilaterally altered the punishment for M.K. and declared that M.K. could not enroll at the middle school until M.K. had enrolled at Endeavor.

51. Through Counsel M.K. protested the new punishment and cited to Lumpkin the specific punishment from the committee:

> After hearing testimony, the recommendation of the committee is that M████ K████. be removed from Pearl River Central Middle School and assigned to the Pearl River Central Endeavor School through the end of the first semester. M██████ will receive counseling services once a week.  Upon returning to the Pearl River Central High School, M██████ will be placed on probation for the period of one calendar year. M██████ is prohibited from entrance onto Pearl River Central School's property for other than official school business for the duration of his suspension from the Pearl River Central Middle School.

**Exhibit A, Removal Letter**.

52. The original punishment was already arbitrary and in violation of the law, but the new punishment would extend M.K.'s punishment to at least 12 weeks of "suspension."

53. According to Lumpkin, M.K. must enroll at the Endeavor School for 6 weeks before M.K. can return to normal classes. Of course, nowhere is this requirement found in the Committee's statement regarding punishment for M.K. Rather, this six-week enrollment requirement is based solely upon Lumpkins own whims and desires.

54. It appears evident from Lumpkin's misguided statements that the Endeavor School is being used by the Pearl River County School District as a punishment itself rather than an alternate school. Only judges can sentence persons to a term of imprisonment, not superintendents.

55. M.K. protested the extended punishment and was told to contact the school's attorney with any future issues. Instead of trying to resolve the issues, the school forced M.K. to bring litigation.

56. M.K.'s punishment has been grossly inflated and disproportionate. M.K. has no prior disciplinary issues or conduct violations.

## STATE LAW CLAIMS

### a.   **Menace - Bullies**

57. The Bullies have undertaken a course of action to harass and bully M.K., culminating in a physical **assault/battery** for which each is jointly liable as

instigating the and being directly involved with the **harassment**.

58. The Bullies' actions have taken place over a period of time and are described in Mississippi law as a menace.

59. Additionally, the Bullies' actions constitute the torts of intentional infliction of emotional distress. The Bullies' actions are outrageous and have been undertaken with the intent to harm M.K. and cause M.K. emotional distress.

60. The Bullies' parents are responsible for the actions of their minor children.

61. The parents know or should know of their children's behavior and tendencies.

62. The parents have a duty and responsibility to ensure that their children are not being raised as a menace to society. Despite these legal obligations, the parents of the Bullies have apparently failed to meet their obligations in society and are therefore legally responsible for their children's actions.

**b.  MTCA Claims**

63. A notice under the MTCA is being drafted and will be sent to the School Defendants. Once the time has run, M.K. will amend his Complaint to include his claims under the MTCA.

**TITLE IX CLAIMS**

64. All public and private elementary and secondary schools, school districts, colleges, and universities receiving any federal financial assistance must comply with Title IX.

65. At all times the Pearl River County School District and its employees fell under the auspices and requirements of Title IX.

66. Because of the type of bullying and harassment complained of by M.K. and his parents, the School Defendants were required to investigate and intervene in the incessant harassment and bullying.

67. Instead the School Defendants took no action and tacitly approved of the bullying.

68. Upon information and belief, M.K.'s mistreatment and arbitrary disproportionate punishment was done in retaliation for the reports made about bullying.

69. The punishment rendered by the School Defendants was and still is a gross deviation from the school handbook.

70. Students guilty of physical assault have not been sent to detention or suspended.

71. Upon information and belief, older male students accused of harassing female students have not been suspended or sent to detention. While M.K. is sentenced to the Defendants' version of prison for trying to stand up to his Bullies.

72. The School Defendants failure to protect M.K. and the Defendants' retaliatory punishment is in violation of Title IX.

73. Based upon the facts of this case, the Individual School Defendants all knew or should have known that the actions complained of herein were in violation of federal law, yet no Individual School Defendant took any action to intervene and deter the constitutional and discriminatory violations alleged

herein.

## VIOLATION OF THE 14th AMENDMENT OF THE UNITED STATES CONSTITUTION ALL SCHOOL DEFENDANTS

74. M.K. hereby incorporates and adopts each and every allegation in the preceding paragraphs.

75. The Fourteenth Amendment of the United States Constitution provides that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. Amend. XIV, § 1.4

76. Pursuant to the Fourteenth Amendment of the United States Constitution , John Doe, possesses a property interest in his status as a student at the middle school and his education, as well as a liberty interest in his reputation.

77. The School Defendants are state actors who owe M.K. protections consistent with the Fourteenth Amendment to the U. S. Constitution.

78. Although due process is required in campus disciplinary cases, M.K.'s due process rights were denied by the School Defendants. At all times herein, the School Defendants were acting under color of state law, and their actions and omissions caused M.K. to be subjected to a deprivation of his constitutional rights and suffer harm in violation of Title IX and the 14th Amendment.

79. The policies, practices and procedures of the School Defendants with respect to investigations and issuance of discipline towards the accused, both facially and as applied, violate federal law.

80. The policies, practices and customs of the School Defendants which were adopted, implemented, maintained  and sanctioned by the school and its policymaking official(s)

were the moving force behind the deprivation of M.K.'s constitutional rights and were adopted, maintained and applied with deliberate indifference to the rights of M.K. and other similarly situated students.

81. The Defendants' conduct violated M.K.'s substantive and procedural due process rights by denying M.K. fundamentally fair disciplinary procedures, the right to a meaningful opportunity to clear his name and by irreparably damaging his right to pursue his education and future career opportunities.

82. The School Defendants deliberately and intentionally refused to accept certain evidence from M.K. for consideration and refused to consider such evidence.

83. The School Defendants knew or should have known of the requirements of Title IX and the substantive and procedural due process rights to which M.K. and others are entitled. Despite this knowledge and the clearly established nature of both statutory and constitutional mandates, the School Defendants acted with deliberate indifference towards those rights.

84. The fact that M.K. was not allowed to ask questions of "witnesses" deprived M.K. of due process. The allegations made against M.K. are of a serious nature such that more due process is required.

85. As a direct and proximate result of the actions and omissions of the Defendants, M.K. has suffered and continues to suffer damages, including but not limited to, loss of educational opportunity, classroom time, loss of future income, liberty and property deprivations, humiliation, and mental anguish. M.K. seeks recovery from the Defendants jointly and severally for the damages suffered.

86. M.K. is entitled to declaratory relief, an injunction enjoining violation of Title IX by the

Defendants in the process of investigating and adjudicated sexual misconduct complaint, and to immediate full reinstatement in good standing at the middle school. M.K. is entitled to have any finding of responsibility wholly and permanently expunged from his academic record and to a seal of all such proceeding to protect against subsequent disclosure to any other person or academic institution.

87. Additionally, M.K. is entitled to compensatory and punitive damages in an amount to be determined at trial, plus pre-judgment interest, attorney's fees, expenses, costs and disbursements.

88. All School Defendants named herein had an obligation to prevent the constitutional deprivation complained of herein. No School Defendant intervened and tried to help M.K.

89. In addition, the School Defendants allowed M.K. to be interrogated by male employees without notifying M.K.'s parents before the interrogation took place. The interrogation of a minor regarding the misconduct allegations violated M.K. rights under the **5th and 14th** Amendments. The School Defendants forced M.K. to incriminate himself without parental consent or legal counsel.

90. M.K. substantive due process rights because the punishment rendered was arbitrary and capricious, grossly disproportionate to the alleged misconduct, and was rendered in contravention of the school handbook.

91. Based upon the facts of this case, the School Defendants are using the Endeavor School as a prison, not just an alternative school. Instead of suspending students, the School Defendants are sentencing students to a term

of confinement at the Endeavor School by requiring students to enroll at the "prison" before the students may enroll back in normal society – aka school. The Defendants use of the Endeavor School violates federal law and the **8th Amendment** as a form of cruel and usual punishment without due process. Only a jury and/or a judge can sentence a person to confinement.

92. The original punishment rendered by the School Defendants violated the 14th Amendment.

93. The extended punishment rendered by Lumpkin, requiring M.K. to enroll at the Endeavor School during the Spring 2022 semester violates M.K.'s substantive and due process right because there was no hearing or opportunity to be heard. The extended punishment is the definition of arbitrary and capricious.

94. M.K.'s punishment also runs afoul of the equal protection clause. While it may not be "kosher" in today's society, the allegations made against M.K. are a common occurrence in the locker rooms within the Pearl River County School District. While "exposure" occurs from time to time in the bathrooms and locker rooms, upon information and belief other students have been accused of more serious allegations of "sexual misconduct" and were not suspended for more such a great length of time for their first offense.

95. In addition, students accused of statutorily criminal conduct, such as assault, have not been suspended, while M.K. has been suspended for almost half the school year for standing up to one of his Bullies who followed M.K. into the bathroom.

96. For all of the above reasons, M.K.'s punishment and the School Defendants' actions violated the law.

## VIOLATION OF THE 1ˢᵗ AMENDMENT OF THE UNITED STATES CONSTITUTION ALL SCHOOL DEFENDANTS

97. M.K. hereby incorporates and adopts each and every allegation in the preceding paragraphs.

98. Upon information and belief, the School Defendants did not like M.K. as much as some of the other students involved. The School Defendants did not care for M.K.'s complaints of bullying and harassment.

99. The School Defendants used the disciplinary process to punish M.K. and try and force M.K. to leave the school.

100.   M.K.'s allegations herein are bolstered by Lumpkins unilateral enhancement of M.K. suspension without due process. Without notice or a hearing, M.K.'s suspension was altered from the remainder of the 2021 semester to the 2022 semester.

101.   This unlawful alteration is intended to punish M.K. and force M.K. to change schools and be out of the School Defendants' "hair" for the future.

102.   The School Defendants have no other rational basis for M.K.'s punishment and unilateral enhancement.

103.   At the end of the day M.K. is being deprived of a Free and Public Education because M.K. exercised his rights under the law and the Constitution.

## VIOLATION OF THE 14TM AMENDMENT OF THE UNITED STATES CONSTITUTION, BROUGHT PURSUANT TO

## 42 U.S.C. § 1983 – SUBSTANTIVE DUE PROCESS BY ARBITRARY AND CAPRICIOUS ACTION

104.    M.K. hereby incorporates and adopts each and every allegation in the preceding paragraphs.

105.    The actions of the School Defendants in rendering a decision to suspend M.K. are arbitrary and capricious, not based upon reason, but rather, based upon will alone.

106.    "An act is arbitrary when it is not done according to reason or judgment, but depending on the will alone." *Burks v. Amite County Sch. Dist.*, 708 So.2d 1366, 1370( 14) (Miss.1998) (*citing McGowan v. Mississippi State Oil & Gas Bd.*, 604 So.2d 312, 322 (Miss. 1992)). An act is capricious when "done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles ." *Id.*

107.    M.K. was not allowed question any person or provide evidence to the School Defendants who sentenced M.K. to a term of confinement, unbeknownst to M.K. at the time the decision was rendered.

108.    M.K. is the victim who has been punished for trying to help himself when the victim was abandoned by the School Defendants.

109.    '(T)he 'protection of the individual against arbitrary action' . . . (is) the very essence of due process,' *Slochower v. Board of Higher Education,* 350 U.S. 551, 559 (1956), but where the State is allowed to act secretly behind closed doors and without any notice to those who are affected by its actions, there is no check against the possibility of such 'arbitrary action. *Id.* Moreover, where 'important interests' of the citizen are implicated (*Bell v. Burson*, 402 U.S. 535, 539 (1971)) they are not to be denied or taken away without due process. *Id.*

110.    Education without interference and interruption is of important interest to M.K. and all students. M.K. cannot receive an education when the School Defendants are mistreating him and allowing others to bully him without recourse.

111.    The unjust actions by the School Defendants have destroyed M.K. mentally, physically, emotionally, and will likely affect M.K. professionally. The Defendants' "closed door" actions must not go without rebuke.

## PRAYER FOR RELIEF

Wherefore, M.K. respectfully demands trial by jury and requests the following relief:

A.    The Court enter a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, that the School Defendants have violated Title IX and policies and practices of the School, both facially and as applied violate the due process rights of M.K.

B.    The Court enter an injunction enjoining Defendants from violating M.K.'s constitutional rights and rights established under Title IX, by continuing the discriminatory and unlawful disciplinary action that was issued against him, requiring Defendants to immediately to restore M.K. as a student in good standing at the middle school and prohibiting the Defendants from issuing further disciplinary proceedings against him pending resolution of this matter. M.K. is entitled to have any finding of responsibility wholly and permanently expunged from his academic record and to a seal of all such proceeding to protect against subsequent disclosure to any other person or academic institution.

C.    Retain jurisdiction of this matter for the purpose of enforcing the Court's Order.

D.    Award M.K. monetary relief in an amount to be determined but in excess of the minimum jurisdictional limits of this Court.

E.      Award M.K. costs and other reasonable expenses incurred in maintaining this action,

including reasonable attorney's fees as authorized by Title IX and 42 U. S.C

§1988.

F.      Grant such further and additional relief as the Court may deem just, proper, and

equitable.

G.      Award M.K. damages for actual, compensatory, pecuniary, non-pecuniary, and punitive

damages against the Defendants named herein.

This the 3 day of February 2022.

> **M.K. a minor by and through his father**
> **And next friend GREG KOEPP**
>
> __ _____
> Daniel M. Waide, Esq.

Daniel M. Waide, (MSB#103543)
Johnson, Ratliff & Waide, PLLC
1300 HARDY ST.
PO BOX 17738
HATTIESBURG, MS 39404
601-582-4553 (OFFICE)
601-582-4556 (FAX)
dwaide@jhrlaw.net